**UNITED STATES of America**
**v.**
**Walter B. SPEARS, Appellant.**
**No. 23043.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 21, 1970.

Decided Feb. 16, 1971.

Mr. Nicholas E. Allen, Washington, D. C. (appointed by this court) for appellant.

Mr. John Ellsworth Stein, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before ROBINSON, MacKINNON, and WILKEY, Circuit Judges.

MacKINNON, Circuit Judge:

Appellant was convicted of various offenses arising out of his robbery of the Columbia Heights Branch of the United States Post Office in the District of Columbia. In Count I of the six-count indictment he was charged under the Federal Mail Robbery Statute [1] with assaulting and placing in jeopardy the life of Clarence W. Smith, a custodian of the United States mail, with the intent to rob him.[2] In Count II he was charged under the District of Columbia robbery

---

1. 18 U.S.C. § 2114 (1964):

Whoever assaults any person having lawful charge, control or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal or purloin such mail matter * * * or robs any such person of mail matter, or of any money or other property of the United States, shall, for the first offense, be imprisoned *not more than ten years;* and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail matter * * * or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

2. Count I charged:

On or about August 13, 1968, within the District of Columbia, Walter B. Spears assaulted Clarence W. Smith, a person having lawful charge, control and custody of the United States Post Office, known as the Columbia Heights Station, with intent to rob, steal and purloin mail matter, money and other property which were then in the charge, control, and custody of said Clarence W. Smith, and in attempting to effect such robbery, Walter B. Spears put the life of Clarence W. Smith in jeopardy by the use of a dangerous weapon, that is, a pistol.

and crime of violence statutes[3] with robbing Smith of money belonging to the United States while armed with a dangerous weapon.[4] He was also charged with three counts of assault with a dangerous weapon and one count of carrying a dangerous weapon. The jury returned a verdict of guilty on both Counts I and II and appellant was sentenced to concurrent terms in prison of from eight and one-half to twenty-five years on each of said counts. In addition, while not materially relevant to our discussion, he was convicted and sentenced on two counts of assault with a dangerous weapon and on one count of carrying a dangerous weapon.

## I

*The two convictions of robbery and of assault with intent to rob*

■ Appellant's first contention is that it was improper for him to be convicted and sentenced on both Counts I and II because the assault charged in Count I "merged" with the completed robbery charged in Count II permitting only one conviction and one sentence.[5] In opposition to this contention, the Government argues that the offenses

charged in Counts I and II were violations of two different statutes and each had different elements thus permitting separate convictions and separate sentences. Specifically, the Government argues that the evidence necessary to support a conviction under Count I would not support a conviction under Count II because the former did not require proof of a completed robbery. Likewise, the evidence necessary to support a conviction under Count II would not support a conviction under Count I because the latter did not require proof that a life had been placed in jeopardy.[6]

■ Before considering the merits of these arguments, we note that we are not precluded from considering appellant's claims by the fact that he received concurrent sentences. While this court has followed frequently the statement in Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), that one valid conviction precludes review of others when concurrent sentences have been given,[7] Benton v. Maryland, 395 U.S. 784, 789–790, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969) makes it clear that the rule is a discretionary one. This discretion has been exercised in favor of review in the past by this

3. D.C.Code § 22–2901 (Supp. III, 1970) provides:

Whoever by force or violence, whether against resistance or by sudden or ting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery * * *.

D.C.Code § 22–3202 (Supp. III, 1970) provides:

If any person shall commit a crime of violence within the District of Columbia when armed or having readily available any pistol or other firearm * * * he may in addition to the punishment provided for the crime be imprisoned for an indeterminate number of years up to life as determined by the court * * *.

Robbery is defined as a "crime of violence" by D.C.Code § 22–3201 (Supp. III, 1970).

4. Count II charged:

On or about August 13, 1968, within the District of Columbia, Walter B.

Spears, while armed with a dangerous weapon, that is, a pistol, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Clarence W. Smith, property of the United States, in the care, custody and control of Clarence W. Smith, of the value of about $1,944.75, consisting of $1,944.75 in money.

5. Appellant did not raise this issue in the court below. We consider it here, however, because of its importance. Fed.R. Crim.P. 52(b).

6. It was necessary to prove an assault under both Counts I and II of the indictment.

7. *E. g.*, Duckett v. United States, 133 U.S.App.D.C. 305, 410 F.2d 1004 (1969); Greene v. United States, 100 U.S.App.D.C. 396, 246 F.2d 677 (1957), rev'd on other grounds, 358 U.S. 326, 79 S.Ct. 340, 3 L. Ed.2d 340 (1959).

court.[8] Chiefly because of the possible harmful effect on appellant of the myriad collateral consequences of an improper double felony conviction [9] and the desirability of having this issue settled, we have again decided to exercise it in favor of review.

In turning to the merits, we note first that the assault with intent to rob is charged under the Federal Mail Robbery Statute [10] and that the robbery is charged under statutes of the District of Columbia.[11] While one might question, on various grounds, the advisability of charging the assault and the completed robbery under different criminal codes, especially when the specific federal statute under which the assault was charged also made it a crime to commit the completed robbery, still it is not questioned here that both statutes are generally applicable throughout the District of Columbia. Thus, both 18 U.S.C. § 2114 and D.C.Code §§ 22–2901, 3202 each are applicable to the crime committed by appellant,[12] and since we vacate the conviction on the assault charge, the fact that it was charged under the federal law, while the robbery was charged under the District law, is immaterial.

In many cases, when separate statutes are applicable to a single act, the test enunciated by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) determines whether Congress intended the act to be punished as one crime or two.[13] In *Blockburger,* the petitioner was convicted of (a) selling morphine not in or from the original stamped package [14] and (b) with respect to the same sale of selling morphine not pur-

---

8. *See* United States v. Casson, 140 U.S. App.D.C. 141, 434 F.2d 415 (1970); Coleman v. United States, 137 U.S.App. D.C. 48, 420 F.2d 616 (1969); Bryant v. United States, 135 U.S.App.D.C. 138, 417 F.2d 555 (1969). Other circuits have done likewise. *See, e. g.,* United States v. McKenzie, 414 F.2d 808 (3d Cir. 1969); Jones v. United States, 396 F.2d 66 (8th Cir. 1968); Holland v. United States, 384 F.2d 370 (5th Cir. 1967); Hibdon v. United States, 204 F.2d 834 (6th Cir. 1953).

9. *See, e. g.,* Benton v. Maryland, 395 U.S. 784, 790–791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); Street v. New York, 394 U.S. 576, 579–580 n. 3, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); Sibron v. New York, 392 U.S. 40, 50–58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Carafas v. LaVallee, 391 U.S. 234, 237–238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Ginsberg v. New York, 390 U.S. 629, 633–634 n. 2, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). *See generally* D.C.Code § 22–104 (1967); D.C. Court Reform Act, Pub.L. 91–358, § 201 (b), U.S.Code Cong. & Ad.News 2660 (1970). The issue here being considered involves the propriety of multiple *convictions.* This issue is distinguishable from the issue of the propriety of multiple *sentences* when multiple convictions are permissible. *See* Fuller v. United States, 132 U.S.App.D.C. 264, 289, 407 F.2d 1199, 1124 (*en banc,* 1968); Irby v. United States, 129 U.S.App.D.C. 17, 390 F.2d 432 (*en banc,* 1967).

10. Notes 1 and 2, *supra.*

11. Notes 3 and 4, *supra.*

12. D.C.Code § 4–120 (1967) provides:

    The provisions of the several laws and regulations within the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the United States within the District of Columbia.

    However, the District of Columbia statutes might be applicable without the enabling act. Whittlesey v. United States, 221 A.2d 86, 89 (D.C.App.1966); *cf.* Kelly v. Johnston, 128 F.2d 793, 795 (9th Cir. 1942). We are not required to decide whether *both* the robbery provisions of 18 U.S.C. § 2114 and D.C.Code § 22–2901 are applicable, *i. e.,* whether appellant could have been convicted of robbery under both statutes for the instant robbery. *Compare* United States v. Hooper, 139 U.S.App.D.C. 171, 432 F.2d 604 (1970).

13. *E. g.,* Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Evans v. United States, 98 U.S. App.D.C. 122, 232 F.2d 379 (1956). *See generally* Comment, 43 Notre Dame Law. 1017 (1966).

14. Blockburger v. United States, 284 U.S. 299, 301, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *see* 26 U.S.C. § 4704 (1964).

suant to a written order of the purchaser.[15] In rejecting petitioner's argument that the two charges permitted but one conviction, the Court said that Congress had not manifested an intent to prohibit all sales of morphine when it enacted the two statutes but had manifested an intent to prohibit certain practices in connection with sales of morphine. The single sale made by petitioner involved two forbidden practices for which he could be convicted and punished twice. In the absence of congressional intent to the contrary, the Court held that

> [t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.[16]

The test prescribed in *Blockburger*, though criticized by some as being too broad,[17] has been followed in this jurisdiction[18] and in others.[19] It has not been followed blindly, however, and statutory schemes which, on their face, permit multiple convictions under the *Blockburger* test have been held to permit only one where the intent of Congress was manifest that only one conviction should result.[20] Because there appears in the legislative history of 18 U. S.C. § 2114 substantial evidence that Congress did not intend a person to be convicted of assault with intent to rob and with the completed robbery, we think that the *Blockburger* test is inapplicable to the case at bar. It is the intent of Congress that controls.

18 U.S.C. § 2114, the mail robbery statute here under consideration, is derived from a statute of considerable age. Pursuant to its powers over the post office,[21] Congress, in 1792, established a number of post roads and made provisions governing the carriers who were to use the roads in delivering the mail.[22] In the same statute, larceny of the mail and robbery of the mail from a carrier were made offenses punishable by death.[23] In 1794, Congress greatly reduced the penalty for larceny of the mail but left unaltered the penalty for rob-

15. Blockburger v. United States, 284 U.S. 299, 301, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ; *see* 26 U.S.C. § 4705 (1964).

16. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

17. *See, e. g.*, Comment, *supra* note 13; Note, Twice in Jeopardy, 75 Yale L.J. 262 (1965) ; Note, Multiple Punishments, 50 Minn.L.Rev. 1102, 1105–1106 (1966).

18. *See, e. g.*, cases cited *supra* note 13.

19. *E. g.*, Nolan v. United States, 423 F.2d 1031, 1048 (10th Cir. 1970) ; Clemas v. United States, 423 F.2d 461, 462 (8th Cir. 1970) (per Blackmun, J) ; United States v. Leibowitz, 420 F.2d 39, 43 (2d Cir. 1969) ; Akin Distributors of Florida, Inc. v. United States, 399 F.2d 306, 307 (5th Cir. 1968). In some situations the *Blockburger* test may be modified by the "unit of prosecution" test which is not here relevant. *See, e. g.*, Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) ; Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.

Ed. 905 (1955) ; United States v. Lewis, 140 U.S.App.D.C. 345, 435 F.2d 417 (1970).

20. *E. g.*, Davenport v. United States, 122 U.S.App.D.C. 344, 353 F.2d 882 (1965) ; Ingram v. United States, 122 U.S.App. D.C. 344, 353 F.2d 872 (1965). Particularly has this been evident in cases involving the Federal Bank Robbery Act, 18 U.S.C. § 2113 (1964). Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L. Ed.2d 407 (1959) ; Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L. Ed.2d 370 (1957). *See generally*, Merker, Multiple Punishments in the Federal Courts, 4 Am.Crim.L.Q. 206, 210 (1966) ; cases cited note 8 *supra*.

21. U.S.Const. art. I, § 8, cl. 7: "The Congress shall have power * * * To establish Post Offices and Post Roads * * *."

22. Act of February 20, 1792, ch. 7, § 1, 1 Stat. 232.

23. Act of February 20, 1792, ch. 7, § 17, 1 Stat. 237.

bery of a mail carrier.[24] Several years later, aiding and abetting the commission of the two offenses was made punishable in the same manner as was the commission of the offenses themselves.[25]

At that time there was no statute specifically proscribing *attempts* to rob a mail carrier. In 1799, however, in a statute which for the first time formally organized the Post Office Department, an *attempt* amounting to an unconsummated robbery of a mail carrier was made punishable by imprisonment for not more than two years. At the same time, the penalty for simple robbery of a mail carrier was reduced to public whipping and ten years' imprisonment for a first offense. For subsequent offenses, and for wounding or placing the life of the carrier in jeopardy while robbing or attempting to rob him, the death penalty was authorized.[26] By 1799, then, the essential elements of the offenses now codified in 18 U.S.C. § 2114 had been enacted.[27] Except for the penalties involved, the elements have

been little changed from that time until the present.[28]

The "attempt" portion of the 1799 statute is of particular importance in this case. Though it has been modified several times over the years, the changes have been essentially in form and not in substance. To begin with, the 1799 statute did not proscribe all attempts to rob mail carriers; rather it said that

if any person shall attempt to rob the mail of the United States, by falling on the person having custody thereof, shooting at him or his horses, or threatening him with dangerous weapons, *and the robbery is not effected* * * * [he] shall be punished * * *[29]

In the general revision, consolidation and amendment of the postal laws in 1872,[30] the section dealing with attempts to rob was slightly altered to provide:

[A]ny person who shall attempt to rob the mail by *assaulting* the person having custody thereof, shooting at him or his horse, or threatening him with dangerous weapons, *and shall not*

---

24. Act of May 8, 1794, ch. 23, § 17, 1 Stat. 361.

25. Act of March 3, 1797, ch. 19, § 4, 1 Stat. 511.

26. Act of March 2, 1799, ch. 43, § 15, 1 Stat. 736:

[I]f any person shall rob any carrier of the mail of the United States, or other person entrusted therewith, of such mail, or of part thereof, such offender or offenders shall, on conviction, be publicly whipped * * * and be imprisoned not exceeding ten years; and if convicted a second time of a like offence, he or they shall suffer death: or if in effecting such robbery of the mail, the first time, the offender much [*sic*] wound the person having custody thereof, or put his life in jeopardy, by the use of *dangerous weapons*, such offender or offenders shall suffer death. And if any person shall attempt to rob the mail of the United States, by falling on the person having custody thereof, shooting at him or his horses, or threatening him with dangerous weapons, *and the robbery is not effected* every such offender, on conviction thereof, shall be punished by whipping, not exceeding

thirty lashes, or with imprisonment not exceeding two years, or with both * * *. (Emphasis added.)

27. While jeopardy was originally proved if a person was put in terror of his life, United States v. Wilson, 28 Fed.Cas. 699, 708, No. 16,730 (C.C.E.D.Pa.1830), under current usage it can be proved, as the court below charged, only if there is evidence that a life was in fact in danger. United States v. Donovan, 242 F.2d 61 (2d Cir. 1957).

28. The punishment for attempted robbery was increased to three years in 1810. Act of April 30, 1810, ch. 37, § 19, 2 Stat. 598. Punishments for all of the offenses were modified in 1825. Act of March 3, 1825, ch. 64, § 22, 4 Stat. 108. By 1872, the death penalty had been eliminated and the unitary statute quoted *supra* note 26 had been split into two separate statutes. Act of June 8, 1872, ch. 335, §§ 285, 287, 17 Stat. 320. *See also* Rev.Stat. §§ 5472, 5473 (2d ed. 1878).

29. Act of March 2, 1799, ch. 43, § 15, 1 Stat. 736 (emphasis added).

30. Act of June 8, 1872, ch. 335, § 1 *et seq.*, 17 Stat. 283.

*effect such robbery,* shall   \*   \*   \* be imprisoned   \*   \*   \*.[31] The words "any person who attempts to rob the mail by assaulting the person having custody thereof" thus replaced the words "if any person shall attempt to rob the mail of the United States, by falling on the person having custody thereof." Under the 1799 statute, however, the prohibited attempts amounted, in essence, to assaults and the 1872 revision did not change the nature of the acts made punishable in any material respect. The only assaults coming within the statutory ban remained those in which the accused attempted, but failed to commit, the robbery of a mail carrier.[32] In this general form, the offense was carried into the Revised Statutes of 1878.[33]

When the entire United States penal code was codified, revised and amended in 1909, the language of the above mail robbery attempt statute was again changed. This time, the words "[w]hoever shall assault any person having lawful   \*   \*   \*   custody of any mail matter with intent to rob such mail matter" replaced the words "[a]ny person who shall attempt to rob the mail by assaulting the person having custody thereof." [34] The explicit reference to the robbery not being effected was deleted, but as the legislative history of the passage of the 1909 Code through Congress makes clear, the only assault the statute sought to punish as such remained one which was part of an uncompleted attempt to rob a mail carrier.

Prior to the 1909 codification, the Revised Statutes set forth the offenses of attempted robbery and robbery in two separate sections [35] but when the bill to accomplish the 1909 codification was drafted by a joint committee of Congress the two sections were consolidated. In effecting the consolidation, the committee eliminated all mention of the use of a dangerous weapon and of placing the life of the carrier in jeopardy and it changed the punishment for both assault and for robbery to imprisonment for not more than ten years for a first offense.[36]

---

31. Act of June 8, 1872, ch. 335, § 287, 17 Stat. 320 (emphasis added).

32. Compare note 26, *supra,* and Rev.Stat. § 5473 (2d ed. 1878).

33. Rev.Stat. §§ 5472, 5473 (2d ed. 1878). The Revised Statutes were not generally intended to work a change in existing law. *See* Act of June 20, 1874, ch. 333, § 2, 18 Stat. 113 (Pt. 3) ; Anderson v. Pacific Coast S.S. Co., 225 U.S. 187, 199, 32 S.Ct. 626, 56 L.Ed. 1047 (1912). *See generally* 42 Cong.Rec. 582 (1908) ; Devan & Feidler, The Federal Statutes— Their Uses & History, 22 Minn.L.Rev. 1008, 1012–1017 (1938). *See* cases cited note 38, *infra.*

34. Act of March 4, 1909, ch. 321, § 197, 35 Stat. 1126 :

Sec. 197. Whoever shall assault any person having lawful charge, control or custody of any mail matter, with intent to rob, steal or purloin such mail matter or any part thereof, or shall rob any person of such mail or any part thereof, shall, for a first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery, he shall wound the person having custody of the mail, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

35. Rev.Stat. §§ 5472, 5473 (2d ed. 1878).

36. As originally drafted, the bill, S. 2982, read :

Whoever shall assault any person having lawful charge, control or custody of any mail matter, with intent to rob, steal or purloin such mail matter or any part thereof, or shall rob any person of such mail or any part thereof, shall, for a first offense be imprisoned not more than ten years, and for a subsequent offense shall be imprisoned *twenty-five years.*

42 Cong.Rec. 975 (1908) (emphasis in original). The Committee Report indicated that the only change intended from the Revised Statutes was the elimination of the penalty for placing a life in jeopardy, *i. e.,* the report stated :

This section is made up of two sections of the Revised Statutes. Under those sections, one committing robbery of the mails, or *attempting* to do so, and in doing or attempting to do which makes use of a dangerous weapon [*sic*], is subject to imprisonment for life.

These changes were unsatisfactory to some members of Congress who opposed changing any of the elements of the two offenses contained in the Revised Statutes.[37] Accordingly the bill was redrafted to the form in which it passed both houses. The Conference Report which accompanied the redrafted bill to the floor of Congress made it clear that the committee intended no substantive changes by its merger of the two sections of the Revised Statutes:

> The amendment to [the bill as originally drafted] in effect *restores existing law upon this subject.* The House amendment consolidated two sections of existing law, to wit, sections 5472 and 5473, Revised Statutes. The effect of the amendment is to divide the offense denounced, one being an assault of a person having lawful control of the mail with the intent to rob * * * such mail or the robbing of such person of such mail, the second being the effecting or *attempting* to effect such robbery by the use of a dangerous weapon.[38]

An amendment to the statute in 1935 broadened the act to include money and other property of the United States within its coverage,[39] but Congress again indicated its intent to cover robberies and attempts thereat by the language of the title:

> *AN ACT* providing for punishment for the crime of robbing or *attempting* to rob custodians of Government money or property.[40]

Finally, the 1948 revision and codification of the federal laws relating to crimes and criminal procedure was en-

---

This language has been omitted and the maximum imprisonment which may be imposed has been reduced to twenty-five years.
42 Cong.Rec. 975 (1908). (Emphasis added). One Senator, who objected to the removal of a separate penalty for the aggravated offense, called attention to the fact that other changes from the wording of the Revised Statutes were matters of style alone:

> I would suggest to the Senator that the section as reported has some of the other usual amendments, which are an improvement upon the general style, the substitution of the word "Whoever," and so on. So I would ask the Senators who are really in charge and care of the bill to redraft it, simply making such necessary amendments as may be deemed necessary for the purpose of style, retaining the [Revised Statute] provision[s] classifying and grading these offenses.

42 Cong.Rec. 976 (1908).

37. *See* note 36, *supra.*

38. H.R.Rep.No.2270, 60th Cong., 2d Sess. 6 (1909) (emphasis added). *See also* H.R.Rep.No.2319, 60th Cong., 2d Sess. 7 (1909). Earlier, the floor leader of the bill, Senator Heyburn, agreed that no substantive changes from the Revised Statutes were intended. 42 Cong.Rec. 976 (1908). Such remarks made nearly conclusive, for purposes of the statute under discussion, the general presumption that, in the absence of a clear expression to the contrary a revision or consolidation of existing law is not intended to work a change in the effect of such law. Fourco Glass Co. v. Transmirra Prod Co., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); United States v. Grainger, 346 U.S. 235, 73 S.Ct. 1069, 97 L.Ed. 1575 (1953); Anderson v. Pacific Coast S. S. Co., 225 U.S. 187, 32 S.Ct. 626, 56 L.Ed. 1047 (1912); United States v. Welden, 377 U.S. 95, 98, 99, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964).

39. Whoever shall assault any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or any part thereof, or shall rob any such person of such mail matter, or of any money, or other property of the United States, or any part thereof, shall for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he shall wound the person having custody of such mail, money, or other property of the United States, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.
Act of August 26, 1935, ch. 694, 49 Stat. 867; *see* 79 Cong.Rec. 8205 (1935).

40. Act of August 26, 1935, ch. 694, 49 Stat. 867 (emphasis added).

acted by the 80th Congress into positive law [41] with only minor changes in phraseology from the language of the statute as last amended in 1935.[42]

■ The derivation, codification, revision and explanation of what is now 18 U.S.C. § 2114 thus all clearly indicate that the assault proscribed by that section is an assault which forms an integral part of an unsuccessful attempt to rob a mail carrier.[43] As such, under conventional doctrines, the section is not intended to form the basis of an independent conviction when a person is convicted of the completed robbery.[44]

■ That the robbery of which appellant was convicted was not the robbery proscribed by 18 U.S.C. § 2114 but by D.C.Code §§ 22–2901, 3202 does not alter the above conclusion. It is undisputed that the evidence introduced at trial in proof of Count II showed that appellant actually consummated the same robbery he was charged with intending in Count I. He thus robbed the same thing the evidence showed he attempted to rob.[45] For reasons above stated, we do not consider that Congress intended that a statute drawn to proscribe attempts should also support a separate conviction for the completed offense when the defendant is charged with and convicted of substantially the same crime he is charged with attempting.[46]

■■ It is true, of course, that the crime of robbery under D.C.Code §§ 22–2901, 3202 does not require proof that the life of a custodian of the mail was placed in jeopardy.[47] However, it also appears that placing the life of a mail carrier in jeopardy is not itself an independent crime under 18 U.S.C. § 2114, but is an integral part of either the robbery or the assault in connection with the attempted robbery which the section proscribes. When a person is charged with and convicted of the completed robbery, we conclude that Congress did not intend that any of the elements of the attempt, singly or in the aggregate, should form the basis for an independent conviction. This does not mean that separate convictions are impermissible when the defendant is charged with attempting to rob a carrier of mail or postal money under 18 U.S.C. § 2114 and with robbing him of something else, e. g., his watch, wallet, car, ring, money,

---

41. Act of June 25, 1948, ch. 645, 62 Stat. 683.

42. Act of June 25, 1948, ch. 645, § 2114, 62 Stat. 2114, 18 U.S.C. § 2114 (1964).

43. All attempts to rob a mail carrier are not covered by that section; only those are proscribed which involve assaults. Compare D.C.Code § 22–2902 (1967).

44. Similar conclusions have been reached in a number of cases: Smallwood v. United States, 308 F.2d 802, 803 (10th Cir. 1962); Martin v. United States, 241 F.2d 693 (10th Cir. 1957); United States v. Donovan, 242 F.2d 61 (2d Cir. 1957); Brooks v. United States, 223 F.2d 393 (10th Cir. 1955); Hunter v. United States, 149 F.2d 710 (6th Cir. 1945), cert. denied, 326 U.S. 787, 66 S.Ct. 472, 90 L.Ed. 478 (1945); United States v. Bruce, 52 F.Supp. 150 (W.D.Ky.1943).

45. Money is included within the general proscription against robbing mail matter. See notes 1, 39, supra.

46. This does not mean, of course, that a person who has been charged with attempt only must be acquitted if the proof introduced at trial shows a completed offense. See generally R. Perkins, Criminal Law 552 (2d ed. 1969); LaDuke v. United States, 253 F.2d 387 (8th Cir. 1958).

47. It is also true that the sentence for robbery under the D.C.Code sections may be lighter than under 18 U.S.C. § 2114 when a life is placed in jeopardy. D.C.Code § 22–2901 (Supp. III, 1970) authorizes imprisonment for a period of from two to fifteen years upon conviction of robbery. Robbery with the use of a weapon requires an additional sentence, see note 3 supra, but that sentence may turn out to be shorter than the twenty-five years prescribed by 18 U.S.C. § 2114. For that reason, it would seem that the Government might wish to charge a defendant with the commission of robbery under § 2114 if it expects to introduce evidence which would support a conviction of robbery under that section. In the instant case appellant received a sentence of from 8½ to 25 years on each of the two counts.

etc. We hold simply that the part of 18 U.S.C. § 2114 prohibiting assaults was intended by Congress to prohibit certain kinds of attempts to rob and thus cannot support an independent conviction when a defendant is charged with and convicted of committing, in violation of the robbery statute applicable in the District of Columbia, the same crime he is charged with attempting. Appellant's conviction on Count I must therefore be vacated and because we do not know whether the conviction on that count had any effect upon the other sentences adjudged, we remand to the trial court for resentencing on the other counts, the convictions under which we affirm. Coleman v. United States, 137 U.S.App. D.C. 48, 58, 420 F.2d 616, 626 (1969); Bryant v. United States, 135 U.S.App. D.C. 138, 141–142, 417 F.2d 555, 558 (1969).

## II

### *The Claim of Variance*

█ Appellant's second contention is that there was a fatal variance between the crime with which he was charged in Count II and the evidence produced at trial. Specifically, appellant contends that Count II charged him with taking money from the "immediate actual possession of Clarence W. Smith" while the proof showed that the money he took was taken from other persons in the post office who were postal employees. Thus, he argues, the evidence cannot support his conviction under Count II.

We think that appellant's second contention is without merit. The evidence showed that Clarence W. Smith was the foreman of station operations at the Columbia Heights post office. As such, Mr. Smith was in charge of the money located at the station and had control thereof by virtue of his general authority to supervise the postal clerks at the various windows. The evidence also showed that the money in question was taken from the drawers behind the windows at which the clerks stood to dispense postage stamps and other postal supplies. In addition, it showed that appellant tried, without success, to get Mr. Smith to open a safe in which there was presumably more money, and that appellant, loot in hand, pointed a shotgun at Mr. Smith while using him as a hostage to get past the police who had arrived at the scene while the robbery was in progress.

In Neufield v. United States, 73 App. D.C. 174, 187, 118 F.2d 375, 388 (1941), cert. denied, Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1942), we noted that satisfaction of the "possession" requirement of the robbery statute there under consideration did not depend on the niceties of property law. Possession, we held, meant "nothing more than custody or control." *See generally* United States v. Mann, 119 F. Supp. 406, 407 (D.D.C.1954). We have also held that the words "immediate actual possession" mean "an area within which the victim could reasonably be expected to exercise some physical control" over the property in question. Spencer v. United States, 73 App.D.C. 98, 99, 116 F.2d 801, 802 (1940). *See also* Barringer v. United States, 130 U.S.App.D.C. 186, 187, 399 F.2d 557, 558 (1968), cert. denied, 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969). The evidence in this case indicates that Mr. Smith had control and custody of the money taken by the appellant, that the appellant took money from an area within which Mr. Smith reasonably could have been expected to exercise some physical control over it, and that appellant did so by force directed at Mr. Smith personally. Therefore, we find that there was no variance between the crime charged and the one proved. Appellant's conviction on Count II should be affirmed.

The case is remanded to the District Court with directions to vacate and set aside the sentence adjudged on Count I and, since appellant now stands convicted of one less felony, to consider resentencing as to the remaining counts.

So ordered.